WILLIAM BRADY, *Appellant* v. THE CHEROKEE & PITTSBURG COAL AND MINING CO., *Appellee.*

No. 17,343.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Defective Appliances—Knowledge of Master—Evidence.* When an employee seeks to recover damages from his employer for injuries sustained because of an alleged defective appliance furnished for his use, and proof is offered tending to show that it was defective at the time of the injury, without showing actual knowledge of the employer of its defective

and dangerous condition, testimony tending to show the nature of the defect, and that the employer, in the exercise of ordinary care, ought to have known of it, should be received.

Appeal from Crawford district court.   Opinion filed April 6, 1912.   Reversed.

*O. T. Boaz, L. H. Johnson, F. B. Wheeler,* and *C. S. Denison,* for the appellant.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover damages for injuries sustained by appellant while working in appellee's mine.

Appellant was in the employ of appellee as parting driver.   His duties consisted in taking empty mine cars, by means of mules driven tandem, from the bottom of the mine shaft to the parting, about 1700 feet away, where they would be distributed to the various coal diggers throughout the mine, there to be filled with coal and returned to the parting, when the parting driver would hitch to them and return to the mine shaft with the trip of loaded cars that they might be hoisted to the top.

The car is constructed with a drawbar fastened to the floor by five-eighths inch bolts.   The drawbar extends through and projects from each end of the car.   One end is turned into a hook while to the other is attached two links of a chain.   The links on the end of one car are hooked over the hook of the car behind, and so a trip of loaded or empty cars is made up.   To the singletree of the hind mule of the tandem team is attached a tail chain, which is hooked over the drawbar hook of the front car of the trip, and the whole trip of cars is thus moved from one place to another.

The entry leading from the shaft mouth to the parting is dark except for the light furnished from the cap

lights of the driver or miner. The mules have been taught, when near the shaft mouth with a trip of loaded cars, to turn to one side and at right angles with the track, at which moment the driver would unhook the tail chain from the hook of the front car and allow the trip to run up to the shaft mouth impelled by its own momentum.

The appellant had been working in the mine for about three years, and on the morning of the accident had made two or three trips without incident and was taking a trip of eleven loads from the parting to the shaft mouth. When near the shaft mouth the mules turned sharply to one side, as was their custom and as they had been taught, but the appellant, who was riding on the front end of the front car and on the side towards which the mules were wont to turn, was unable to unhook the tail chain from the drawbar hook, whereupon the tail chain became taut as the cars passed by the mules, caught the appellant's leg between it and the end of the car, and, finally, the resistance of the mule team pulled the car from the track and overturned it and its load of coal upon appellant, the following cars piling up against it, and causing the injury complained of.

The appellant in his petition alleges that the inability to unhook the tail chain was due to the fact that the drawbar was loose and in an unsafe condition, by reason of which the hook was drawn towards the car leaving no space through which to remove the link of the tail chain, and that appellee knew, or should have known, the unsafe condition of the car and is, therefore, negligent and liable. The appellee in its answer set up want of ordinary care on the part of appellant and assumption of risk. The court sustained a demurrer to appellant's evidence and instructed a verdict for appellee, from which this appeal is taken.

Two rulings are presented for review, one excluding testimony offered by appellant, and another holding

that all of his testimony did not tend to prove the material facts pleaded by him nor justify the submission of the case to the jury. As to the sufficiency of the evidence, it is argued that if it be granted that the drawbar and appliances of the car were defective there was no testimony that appellee had notice of the defect prior to the accident, nor that by the exercise of reasonable care it might have obtained such notice. There is nothing in the abstract showing when the drawbar became loose nor that the defect had come to the attention of appellee, nor yet that it had existed so long as to charge appellee with notice of the defect. It was not enough to show that the appliance was defective, but it devolved on appellant to prove that appellee had notice of the defect, or that in the exercise of ordinary care, which appellee was bound to observe, it should have known of the defective appliance. The evidence admitted, therefore, was insufficient to establish an essential element of liability, but it is contended that appellant was not permitted to make out his case and that competent testimony offered by him as to whether there was inspection of cars by appellee, and as to the condition of the cars about the time of the accident, and of facts tracing notice of defects to appellee, was excluded. One witness, who was present when the accident occurred, was asked if he noticed whether the drawbar of the car was loose, but an objection to the question was sustained. He was permitted to state that the drawbar extended from under the car seven or eight inches, when it should not have extended farther than two or three inches. The court, however, sustained a general objection to a question as to what the condition of the car would be if the drawbar had been tight, and, also, another as to what should be the proper condition of the drawbar. The superintendent of the mines was called and testified about the number and character of the cars used at the mine but was not allowed to testify whether the drawbar

would move back and forth if the bolts were in position, nor whether there was an inspection of cars at the mine. Still another person, who witnessed the accident and noticed the condition of the cars, was not allowed to answer a question as to the condition of the drawbar at that time nor what the condition of the car was before the accident. All of the proposed testimony was excluded on general objections.

The admitted testimony tended to prove that the car was defective and dangerous, but whether its dangerous condition was, or should have been, known to the appellee was a material question in the case. The rejected testimony bore upon this question and should have been received. In view of the state of the evidence it was important to prove the normal and proper condition of the car and the difference between that condition and the one in which it was found to be when the accident occurred. Whether appellee had exercised ordinary care as to inspection, and also in making a defective appliance safe when it should have known of its unsafety, was the manifest purpose of the offered testimony. If the appellant had produced testimony that the defect was known to appellee, or that its ignorance of the defect was culpable, the demurrer to the evidence must have been overruled.

The exclusion of the testimony was therefore error, and for that error the judgment must be reversed and the cause remanded for a new trial.